UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

       PROMEDICUS HEALTH GROUP, LLP        Case No. 03-10102 K

                                Debtor
------------------------------------------------------------------
Mark S. Wallach, as Trustee of Promedicus Health
Group, LLP
                            Plaintiff

                   -vs-                       AP No. 05-1023 K

McDermott, Will & Emery and Michael L. Blau

                         Defendants
------------------------------------------------------------------

Cheryl R. Storie, Esq., Maureen T. Bass, Esq.,
and Garry Graber, Esq.
Hodgson, Russ, Andrews, Woods & Goodyear
1800 One M & T Plaza
Suite 2000
Buffalo, NY   14203

Attorneys for Plaintiff/Trustee


Stephen Novack, Esq.
Novack and Macey LLP
100 North Riverside Plaza
Chicago, Il. 60606

Randall D. White, Esq. and Terrence M. Connors, Esq.
Connors & Vilardo, LLP
1020 Liberty Building
420 Main Street
Buffalo, NY   14202

Attorneys for Defendants

OPINION AND ORDER

Although the procedural posture of this complex multi-million dollar case is far more complicated than the following statement thereof, the Court deems the matter before it to be this:

Does a Chapter 7 Trustee get past a Rule 12(b)(1) Motion to Dismiss that is based on the governing Second Circuit case law of *Wagoner* and its progeny,[1] simply by alleging that one or more specific partners of the Debtor LLP, who previously had <u>chosen</u> not to be involved in the Management Group of the firm, would <u>now</u> attest that if they had they been fully informed, four years ago, that what the LLP was transacting was wrongful and injurious to the creditors of the LLP, they would have stopped the transaction by any available means?

This question must be answered in the negative. Partners who willingly placed management control in the hands of a managing group of partners may not become "innocent insiders" for purposes of the *Wagoner* Doctrine, <u>after</u> they have either availed themselves of the perceived "fruits" of the transaction or have abandoned the LLP without endeavoring to stop its wrongful conduct. Such a partner may not be presented by the Trustee as an "innocent insider" for *Wagoner* Doctrine purposes simply upon such partner's present attestation of what he or she could have done and would have done had he or she been more involved in what the managing group was up to. As the Defendants have ably argued, a contrary decision would eviscerate the *Wagoner* Doctrine, because no such "remote" partner would ever fail to jump at the opportunity to attest that he or she would never have participated in or permitted the perpetration by the LLP

---

[1] *Wagoner* and certain of its progeny are summarized later in this Decision.

of a fraud upon its creditors, had he or she been fully-informed.

The Facts as Alleged by the
Trustee for Purposes of this Motion[2]

The Chapter 7 Debtor was an LLP composed of over a hundred physicians and other medical care providers. The LLP was formed to enter a "requirements" contract by which the LLP would meet the patient care needs of a non-insider HMO - - Excellus/Univera. The Contract was executed and performed and the LLP met the needs of the HMO for a while. Then there arose a dispute about reimbursement rates. The LLP sued the HMO in State Court, and the HMO later countersued over such issues as "continuity of patient care" under the public health laws.

At some point in the midst of the dispute, the LLP retained the Defendants, an out-of-state law firm and a particular member thereof, to help it extricate itself from the contract with the HMO. What evolved was a strategy to essentially disassemble the LLP and let its partners go off on their own, unaffiliated with the LLP. (There originally were no contracts directly between the HMO and the individual partners.)

Some partners did not agree with the strategy, and they signed individual contracts with the HMO, abandoning the LLP.

All of the management group and all of the remaining non-managing partners,

---

[2] There is another Adversary Proceeding against others involving the same allegations. The Court makes no "findings of fact" that would have any effect in the other Adversary Proceeding. Rather, the Court simply assumes the truth of the Trustee's allegations for purposes of this Motion in this Adversary Proceeding, as it must in the context of a Rule 12(b)(1) Motion.

however, implemented or enjoyed the strategy, which involved fraudulent transfers to those partners, leaving the HMO, and perhaps as much as $5 million in other LLP debt, to pursue an empty shell that voluntarily filed Chapter 7 in January of 2003.[3]

This Adversary Proceeding is against the law firm that was employed by the LLP (and later by some of the individual partners) to carry out the strategy, and against one member of the law firm. Though disputed, it is assumed, for Rule 12(b) purposes, that the Trustee's allegation that the Defendants formulated the strategy is true.

Under the *Wagoner* Doctrine the Law Firm moves to dismiss Causes of Action that are rooted in "Malpractice," "Breach of Fiduciary Duty," "Aiding and Abetting . . . Violation of Law and Misconduct," "Faithless Servant Doctrine," and "Punitive Damages."

As noted above, the procedural posture of this matter has been intentionally understated by this writer. (For example, the Trustee seeks leave to amend the Complaint and seeks leave to conduct discovery to defend the Rule 12(b) motion.) The Court is satisfied that even if the Trustee's Complaint suffers no defects of specificity and even if the Trustee were permitted to amend the Complaint, and even if the Trustee were eventually to produce the particular "evidence" of the "innocent insiders" that he wishes to produce, the outcome would be the same. He still would not be able to get past an eventual *Wagoner*-Doctrine Motion to Dismiss, even on a Summary Judgment Motion <u>after</u> discovery.

---

[3] The assets transferred included, in some instances, equipment, leaseholds, receivables, "injectables" inventory, patient records, and also "releases" by the LLP of unpaid "buy-in" obligations and restrictive covenants in favor of the LLP, against individual partners.

## *WAGONER* AND CERTAIN OF ITS PROGENY

The Second Circuit's *Wagoner* Doctrine addresses the question of standing when the plaintiff is the bankruptcy trustee and the defendant is a third party, rather than the debtor's principals. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("In our analysis of the question [of standing], the "case or controversy' requirement coincides with the scope of the powers the Bankruptcy Code gives a trustee, that is, if a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own." (*citing Warth v. Seldin,* 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (internal citations omitted)). The controversy is often framed in terms of a defendant's Rule 12(b) motion to dismiss. *E.g. Hirsch v. Arthur Andersen & Co.* 72 F.3d 1085 (2d Cir. 1995) (F.R.Civ.P. 12(b)(6) motion); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*, 212 B.R. 34 (Bankr. S.D.N.Y. 1997) (F.R.Civ.P. 12(b)(1) motion).

The inquiry begins in determining whether the trustee's cause of action is grounded in what the third party defendant had allegedly done to injure the innocent debtor. *Barnes v. Schatzkin*, 212 N.Y.S. 536, 538 (N.Y. App. Div. 1925) ("The trustee in bankruptcy has a right to sue for anything that the bankrupt would have had a right to sue for[.]"). In such a case, the trustee, standing in the shoes of the debtor, as he does, is a viable plaintiff. For instance, in *Wagoner* the court allowed the trustee to go forward with that part of the complaint that alleged the third party brokerage firm had engaged in churning of the debtor's brokerage account, viewing that allegation as distinct in law from aiding and abetting the debtor in injuring

creditor's of the debtor's investment operation. *Wagoner*, 944 F.2d at 119. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993) ("Property of the estate does not belong to any individual creditor. If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or debtor-in-possession.") The third party has typically been a stock broker, attorney or accountant. *See Wagoner, Hirsch* and *Wechsler, supra.*

The opposing inquiry is whether the wrongdoing the trustee complains of arose when the third party defendant acted in concert with the entity that later became the Title 11 debtor. In that setting, the trustee lacks standing, the presence of wrongdoing notwithstanding; the cause of action belongs to creditors alone. *Wagoner*, 944 F.2d at 120 (uncontested that debtor's sole stockholder and decision maker knew of and actively advanced conduct that harmed creditors; claims belong solely to creditors); *Barnes*, 212 N.Y.S. at 537 (cause of action belong to creditors and not trustee where debtor and third party were joint tortfeasors in harming interests of creditors).

A trustee cannot be permitted to expend estate assets pursuing claims in which the estate has no interest or where creditors may have their own independent actions. *Barnes*, 212 N.Y.S. at 538 & 539 (trustee denied standing to pursue causes of action merely assigned to him by creditors); *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 429 & 434, 92 S.Ct. 1678, 1686 & 1688, L.Ed. 2d 195 (1972) (plaintiff trustee neither argued, nor could argue, that debtor could make a claim against the third party; granting trustee standing to sue would be inconsistent with creditor's independent right to sue same third party).

Trustees may contend that the debtor's agent acted, with the aid of the third party, in its own interest to the detriment of its principal.  *See Official Comm. Of Unsecured Creditors of Grumman Olson Indus., Inc. v. McDonnell*, 329 B.R. 411, 425 (Bankr. S.D.N.Y. 2005) ("[State] law will not impute [to the principal] the acts and knowledge of the agent where the agent engages in a scheme to defraud his principal on his own behalf or on behalf of another .") (citing *Wight v. BankAmerica Corp.,* 219 F.3d 79, 87 (2d Cir. 2000) and *Center v. Hampton Affiliates, Inc.*, 497 N.Y.S.2d 898 (1985).

In undertaking this analysis, courts apply the law of agency.  *The Mediators, Inc. v. Manney (In re The Mediators, Inc.),* 105 F.3d 822, 827 (2d Cir. 1997) (analyzing effect on trustee's standing of agency law, including adverse interest exception and sole actor exception to the adverse interest exception).  The *in pari delicto* doctrine has served as a component of the agency analysis without an alteration in outcome, as further discussed below.  Indeed, the *Caplin* court introduced the principle into the analysis.  406 U.S. at 430, 92 S.Ct. At 1686 (assuming allegations of third party misconduct are true, trustee describing a situation where debtor and third party were in *pari delicto*); *Wechsler*, 212 B.R. at n.1 (*in pari delicto* and *Wagoner* rule are similar: application depends on a finding that all relevant shareholders and decision makers were engaged in the wrongdoing); *Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group)*, 336 F.3d 94 (2d Cir. 2003) (same).

The inquiry must make sure that the trustee is only seeking recompense for the *direct* benefit of the bankruptcy estate, and not for the *direct* benefit of creditors.  11 U.S.C. § 541 (2006); *Barnes*, 212 N.Y.S. at 539 ("[Trustee] says he wishes to *secure redress*, whereas

the Bankruptcy Act provides for following and recovery of property transferred in fraud of creditors and for an accounting for the value of such property.") (emphasis in original).

This rule has been criticized because of the perception that third party wrongdoers are escaping the consequences of their misconduct when their actions are alleged to contribute to the bankruptcy of the corporation to which they owed a duty. *See* Stephen J. Shimsak & Susan E. Welber, *Revisiting Rule on Trustee Standing: In New Economy, "Wagoner" Doctrine Takes On Added Significance*, N.Y.L.J., Feb. 19, 2002 at 9; Jeffrey Davis, *Ending the Nonsense: The In Pari Delicto Doctrine Has Nothing To Do With What Is § 541 Property of the Bankruptcy Estate,* 21 Emory Bankr. Dev. J. 519. Nevertheless, the critics recognize that the doctrine cannot be said to strip creditors of their rights against those parties that ally with or render services to entities intent on breeching, with the assistance of others, their duties as debtors. *Id.* at 546.

(The Trustee here joins the criticism and asks that this Court depart from the *Wagoner* Rule. Obviously, this Court has no power to depart, and that argument is rejected.)

ANALYSIS

The Court is convinced in this particular case, that "Johnny-Come-Lately" attestations by insiders to the effect that they would have been "Whistle Blowers" or would have otherwise sought to prevent harm to the Debtor's creditors, cannot be permitted to establish "standing" in this Debtor (and therefore in the Chapter 7 Trustee) to overcome a *Wagoner* Defense. After the fact of a massive fraudulent transfer by an LLP, would any partner ever fail to jump at the chance to say that he or she chose to remain sufficiently "removed" to claim

"innocence?" If what politics calls "plausible denial" were to suffice to defeat a *Wagoner* Defense, then *Wagoner* would have no meaning in any case of any debtor that is a partnership.

As to the *Wagoner* Rule itself, this Court recited in open court during argument on November 15, 2006, the fact that Congress specifically rejected, in 1978, a proposal that would have become 11 U.S.C. § 544(c). It would have commanded that

> (c)(1) The trustee may enforce any cause of action that a creditor, a class of creditors, an equity security holder, or a class of equity security holders has against any person, if - -
>
> > (A) the trustee could not recover against such person on such cause of action other than under this subsection;
> >
> > (B) recovery by the trustee for the benefit of such creditor or equity security holder or the members of such class will reduce the claim or interest of such creditor or equity security holder or of such members, as the case may be, against or in the estate;
> >
> > (C) There is a reasonable likelihood that recovery against such person will not create an allowable claim in favor of such person against the estate; and
> >
> > (D) enforcement of such cause of action is in the best interest of the estate.
>
> (2) If the trustee brings an action on such cause of action - -
>
> > (A) the court, after notice and a hearing, may stay the commencement or continuation of any other action on such cause of action; and
> >
> > (B) the clerk shall give notice to all creditors or equity security holders that could have brought an action on such cause of action if the trustee had not done so.
>
> (3) A judgment in any such action brought by the trustee binds all creditors or equity security holders that could have brought an action on such cause of action. Any recovery by the trustee, less any expense incurred by the

>trustee in effecting such recovery, shall be for the benefit only of such creditors or equity security holders.

9 Bankr. Service, L.Ed. Legislative History Chapter 82, Appendix, H.R. 8200.

Congress' rejection of that proposal made necessary the analysis from which the *Wagoner* Doctrine emerged. The roots of the doctrine go back at least to 1925. *See Barnes*, 212 N.Y.S. 536, and *Caplin*, 406 U.S. 416, *supra*. Causes of action that do not belong to the Trustee under 11 U.S.C. §§ 541-549, may not be pursued by the Trustee.

It is important to recognize that the LLP was neither a corporation nor a Limited Partnership. It was a Limited <u>Liability</u> Partnership in which all partners agreed to give near-total management control to a managing group. Thus there were no "shareholders" to be injured by corporate decision makers, and any partner who was informationally "out-of-the-loop" chose to be so.

It is also important to note that although the *Wagoner* Doctrine and the "*in pari delicto*" doctrine have some elements in common, they are not the same. *Wagoner* addresses "standing" in the context of the "case or controversy" limitation on the exercise of Article III power under the Constitution, and the powers of a Chapter 7 Trustee are indeed a "federal question." Such a dispute over "standing" is not to be conflated with an eventual trial on the merits of an affirmative defense: As stated in the Dissent in *Committee v. R..F. Lafferty & Co.* 267 F.3d 340, 361 (3rd Cir. 2001), an opposite conclusion would lead to the anomalous result that if it were ultimately to be concluded, after discovery, and perhaps after trial, that the Trustee lacked standing, the Court would have to conclude that it had no jurisdiction in the first place, and nothing other than that ruling would have any binding effect.

"*In pari delicto,*" on the other hand, is an equitable defense that often necessitates a trial on the merits.

In the Court's view, *Wagoner* and *Bennett Funding* require that the Court satisfy itself of its jurisdiction when the Trustee's standing is challenged, though the Trustee's burden of proof of standing is not heavy at the pleading stage. *Wagoner*, 944 F.2d at 117 (citation omitted); *In re The Bennett Funding Group*, 336 F.3d at 99 (citation omitted). The Court in *Wechsler v. Squadron*, viewed this as a "pleading requirement": "To be valid, a complaint would have to identify [an innocent insider] and explain how he (sic) could and would have brought the fraud to an end." 994 F.Supp. 202, 205 (S.D.N.Y. 1998) (citing *Wechsler*, 212 B.R. at 36). And even if the Trustee here were given leave to amend the Complaint to comply with this standard, it is clear that he simply could not so comply. Amendment would be "futile."

Because this Adversary Proceeding is alleged to be a § 541 claim (it is not an "avoiding action"), it must be made clear to the Court that it is a claim that the LLP itself could have brought against the Defendant on the date that the LLP instead filed its Chapter 7 petition. An element in that analysis happens also to be an element of the "*in pari delicto*" doctrine. That is the "innocent insider" concept. In *Bennett Funding*, the lower court conducted a four-day inquest into that and other matters that "went to" the question of standing. That happened to be after discovery, in the context of a Summary Judgment Motion. The lower court found "standing to be absent." *Breeden*, 336 F.3d at 97 (citing *Breeden v. Kirkpatrick & Lockhart*, 268 B.R. 704, 714 (S.D.N.Y. 2001). The Trustee in *Bennett* complained on appeal that that inquest violated his right to a trial by jury on the defendant's "*in pari delicto*" defense. The Circuit disagreed.

In the *Bennett* case, it was found by the lower court, affirmed by the Circuit, that it was true, as the Trustee there alleged, that there were members of the *Bennett Funding* Board of Directors who were not members of the Bennett Family, but they were "impotent" to have stopped the Bennett's Ponzi Scheme. 336 F.3d at 101. And so the corporation was subject to the "Sole Actor" rule. The wrongdoing of the controlling persons - - the Bennetts - - was "imputed" to the corporation and the Trustee stood in no better shoes than the corporation in trying to aid the <u>creditors</u> of the corporation by pursuing professionals who "aided and abetted" the corporation's fraudulent activities. *Id.* at 102-03.

In the case at Bar, the Court might have ordered such an inquest were it alleged that there were partners who were thwarted in their efforts to uncover the strategy. Even now, in response to the Rule 12(b)(1) Motion based on *Wagoner*, there is no such assertion by the Trustee. Rather, it is asserted that there are partners who were "kept in the dark" and "not fully informed. Deposition testimony is offered by partners who say that they asked, "What's the plan" and were told "Don't ask." And so they didn't.

There is no assertion even now, 21 months after the filing of Defendant's *Wagoner* Motion (the interim was taken up by § 542 turnover of the Debtor's files from the Defendants, its lawyers) that there was any material denial of any partner's rights under the partnership agreement or otherwise. There is, at the most, a representation that some of the fraudulent transfers required a partnership vote that never occurred. But it is not suggested that there was any partner who did not (1) participate in the fraud, or (2) accept the perceived fruits of the fraud, or (3) abandon the LLP and sign-up with Excellus/Univera.

The Court holds that when a partnership is <u>not</u> a "limited partnership," no partner who chose a "hear no evil, see no evil" approach to what the duly-empowered management group (under the Partnership Agreement) is engaged-in on behalf of the firm and its partners, may later be heard to be an "innocent insider" for the purpose of giving "standing" to the firm's Chapter 7 Trustee. The claim belongs to creditors, not to the estate.

To the extent that the "Adverse Interest" doctrine is implicated - - the doctrine that wrongful conduct of agents will not be imputed to the principal if the agents were acting adverse to the principal - - we are led to the fact that "deepening insolvency" does not seem to be relevant here in New York, unlike Pennsylvania. (See *Grumann*). Certainly a decision by an entity to render itself insolvent would, under the laws of some states, give rise to a cause of action that is owned by the entity. In the *Lafferty* case, in Pennsylvania, that fact salvaged the Trustee's "standing," though the Trustee lost on the "*in pari delicto*" defense.

But the law in New York seems to be different. Claims akin to "aiding and abetting" a "deepening insolvency" seem not to be the <u>debtor's</u> claim under New York law. It is a claim owned by creditors, presumably to be sued in intentional tort. (And in a suit by creditors, the Code of Professional Responsibility might be implicated where, as here, the defendant is a law firm. After all, it is this writer's view that a lawyer asked or commanded by a client to formulate or implement or advise a massive fraud upon the client's creditors, should refuse the case. The Defendant did not refuse, and admits all of the client's wrongdoing.[4])

It is also asserted by the Trustee that once the strategy shifted from preservation

---

[4] Of course, attorney-client privilege does not exist as against the Chapter 7 Trustee of the client.

of the well-being of the LLP to preservation of the well-being of its partners, both the management group and the Defendant breached a duty owed to the LLP.  Certainly, if the Debtor were a "Limited Partnership," rather than a "Limited Liability Partnership," there might have been innocent "limited partners" injured by the stripping of assets from the firm.  But under New York law, such limited partners may sue in their own right.  See, for example, *Lichtyger v. Franchard*, 18 N.Y.2d 528, 535-36 (1966).  It is not so clear that they could sue in the name of the firm.  Because this Debtor is a Limited <u>Liability</u> Partnership in which all non-managing partners chose, both by Agreement and by their conduct, to place distance between themselves and the managing partners, the dispositive fact is that even in the face of the Dismissal Motion, the Trustee is unable to produce the name of any partner who chose to refuse the perceived fruits of the Strategy but did <u>not</u> also choose to leave the firm for other perceived benefit.  There is no hint or suggestion that any partner woke-up one day (one pre-petition day) and found herself left "holding the bag" for the firm - - left having to vote herself into management and set out on the firm's behalf to stop or reverse what had been done.  There is no hint or suggestion that the Chapter 7 filing was anything other than the "end game" to the strategy rather than an opening salvo to redress the wrong done to the firm.

Consequently, to this writer, the partnership is indistinguishable from its partners in this case. The partners were at all times served by the strategy, thought the firm's <u>creditors</u> were not. There was no one left in the firm to complain, credibly, as of the petition date.

Finally, assuming arguendo that the strategy was actually concealed from one or more partners, it was not concealed by these Defendants. It would have been concealed by the Partnership's own management group.

1                                                       <u>CONCLUSION</u>

The Court has no idea whether any creditor of the Debtor is or is not now time-barred from pursuing the Defendants in intentional tort on their own behalf. If the time has passed, then it is certainly understandable that those creditors and their counsel might not have anticipated this ruling and are disappointed. What the Debtor LLP seems[5] to have done with assistance of the Defendants is also disappointing to the Court, to say the least. Though it emanated from a two-party dispute between the Debtor and the HMO, millions of dollars of claims held by persons who were not involved in that dispute have remained unpaid as of this date because of the strategy employed by the Debtor in the two-party dispute.

This may be an unfortunate result for creditors. But it is a consequence of (1) Congress' policy decision not to include the proposed § 544(c) in the 1978 Reform Act, and (2) the resulting *Wagoner* Doctrine (with its 80-year old roots), which binds this Court. This Court has no power to question Congress' decision and is bound by the Second Circuit's consequent

---

[5] See footnote 2, above.

decisions.

       The simple fact is that in some cases, Chapter 7 Trustees have not been empowered by law to undo <u>everything</u> that a debtor did on a pre-petition basis that injured the debtor's creditors.

       Defendants' Motion to Dismiss Causes of Action Numbers 1, 2, 3 and 4 is Granted.  This is true also as to Cause 8, in so far as it is premised on Causes 1, 2, 3 and 4.

       Defendants' Motion to Dismiss Cause Number 7 (Unlawful Practice of Law) is granted, and the Trustee's request to re-plead that cause in other terms is Denied.

       All other requests by the Trustee are denied.

       This matter is restored to the Calendar as to the remaining Causes of Action (Preference and Fraudulent Transfer) on <u>January 17, 2007 at 10:00 a.m.</u>, for Report and further scheduling.

Dated:    Buffalo, New York  
           December 15, 2006

                                  s/Michael J. Kaplan  
                                  _____  
                                  U.S.B.J.